Morning, Your Honors. May it please the Court, my name is Brian Penny. I represent the appellant slash plaintiffs in this action. I'd like to try to reserve three minutes for a reply. In this case, the Court below held that plaintiffs alleging consumer fraud claims in California, New York, and New Jersey are required to allege affirmative false statements about a product's and yet that requirement or that element is nowhere to be found in any of those statutes. And instead of so rigidly requiring such an element to be present, those statutes speak much more broadly to acts or practices, quote unquote acts or practices, of the defendant that have the capacity to mislead consumers. And it's not even that those acts or practices are intended to mislead consumers or actually mislead consumers, but only that they have the capacity to do so. And we believe that we had alleged that the huge price disparity between the migraine pills and the extra strength pills in combination with the alert red packaging of the migraine pills indicated to the market and to reasonable consumers acting reasonably under the circumstances that the product that was three times more expensive was more potent or more efficacious. Let me suggest to you, let me give you a very good restaurants. And the menu has two entries under soups. One says in French, it's also the bully or fossil in my mail, chicken soup, the way my mother made it $9. And another entry says chicken soup $3. And they both come out of the same pot, except the French one is in an earthen jar and the other one is in a plain bowl. Can I, is there a fraud there? Is there an actionable fraud there? I think the question that you would ask in that case or in that hypothetical is, is there a deception? Is the consumer misled to think that one soup is of a higher quality or different slash better than the other soup? I think in your example, because you used flowery, a more expressive language to describe the one soup and because you charged three times as much for that soup, that people would presume a reasonable person acting reasonably would think that was a better soup because consumers aren't in the practice of spending more money to get the same product. That's not a rational consumer at least. Do we have any cases that say that? So plaintiff's counsel and appellee's counsel spent a lot of time briefing this case. I don't think either of us pointed to a case that's directly on point here because this is somewhat of a novel situation. I mean, oftentimes you will have two almost or identical products, but one is a brand name, for example, and one is a generic. But there are reasons why those might be sold at different prices. But one might think that a migraine headache is a higher class and more difficult disease to palliate than an ordinary headache. And therefore, a person who has that is a more exceptional individual and therefore is willing to pay a higher price for medicine. Now, tell me what about that is a fraud? Well, the fraud is that the person that you just described who needs to treat the more severe malady of a migraine thinks that they are buying a pill that's specially designed or more effective to treat that more intense malady. There's no question that it is a pill that does treat migraine. Right. And he's getting what and he's getting what he's bargaining for. He's getting a migraine. But what he's not being told is you can get the same medicine for three dollars if you if you take the medicine that just says headache. That's exactly right. And that is the dilemma for that consumer. He's not operating with all the information or complete information when he's in the aisle looking at the product saying I've got a migraine. I need something potent and powerful to alleviate it. I'm looking at two boxes. One says migraine. One says extra strength. One's alert red packaging. One's sedate green packaging. One's three times the cost of the other. The presumption is that pill that I'm paying three times as much for is going to be three times as effective as the cheaper pill. That's a deception. So the deception is not in the description of the product. It's not in the trade dress of the product. The deception is in not making the cheaper one available to the person who's willing to pay nine dollars for migraine treatment. I was with you until the last part of that. The deception wasn't to say that there was a cheaper alternative. The deception was in having two products under the same brand that are the same pharmacologically identical pills, yet selling one for three times as much as the other, changing the color of the packaging from one to the other. And it could have been any color. It could have been blue and green, but it was green and red. The migraine box is red and the migraine is that the average consumer has an ineluctable tendency to think that if it's higher priced, it's better. Right. And that's not just a different, different and better again, because I think it's everybody's common sense that consumers don't just readily spend three times as much money for a product they don't think is better than its alternative. One thing you don't seem to develop much by way of argument is in addition to the color and price difference, the mere titling the product as migraine versus extra strength. Now, is is that part of your argument that by simply providing that this is for migraines, which is generally regarded as more severe than your common headache? The concern with stressing that point in this litigation was that it might tread us into preemption type grounds because you're talking about FDA regulations on labeling. And the point is that Bristol-Myers Squibb, the pioneer of using this formulation, which is essentially Excedrin to treat migraines, spent time and effort to go to the FDA to get a separate licensing approval basically to market the same drug for migraine headaches. But by getting that approval, that's not getting a license to deceive consumers. And in fact, that's not the way Bristol-Myers Squibb used it. When it came out with its migraine and extra strength Excedrin products, it priced them initially at the very same price point and now only sells them at a very slim less than 10 percent price differential. That's not necessarily misleading. But wouldn't the ES qualify then also for the FDA? Because it has the same ingredients? Are you talking about the approval process? Yes. Yes. The ES is now, because that formulation has been around for so long and is so trusted, it is what's called a monograph drug. You don't need any separate approval anymore to market that for headaches. But the migraine label, to be able to put the migraine label on it, required Bristol-Myers Squibb back in 1998 to go to the FDA and say, we want to label the same drug for migraines also. There was a strategic marketing reason, I'm sure, that they did that. But they didn't take advantage of that license to deceive consumers into thinking that one was more And thus I'm going to leverage that to charge them more money. But that's exactly what Walmart's doing. Walmart knows that consumers are being deceived between these two products, thinking that the migraine pill is more effective. And it is using that to charge three times the price for it. Again, we come back to the simple syllogism. Why would anybody spend $9 plus to get the same pill it could get for less than $3 from the same manufacturer? Well, but Walmart is not withholding the information that the two pills have identical pharmacological components. A reasonable buyer who sees these two pills and takes a look at the components which make them up and are listed on the box will say, there's no reason to pay $9 when I can buy three. But to pay $3 is the same thing. Why isn't that a defense? We're not saying that they're withholding information. We're saying they're sending pricing cues and packaging cues to make people think that the one product is more effective than the other. And the effect of that is that the consumer isn't even alerted to the fact that it should be comparing labels. And even if the consumer compares the ingredients in both, the reasonable consumer isn't a pharmacologist. They don't know which active ingredients are really doing what in either pill. And they don't know whether there's more acetaminophen in either pill. But they're identical ingredients, aren't they, Mr. Penny? They have the same listed ingredient. But there's nothing to say that they're in the same amounts in each pill. Again, I'm looking at a product as a reasonable consumer who doesn't know anything about pharmacology other than these pills are going to help alleviate either my headache or my migraine. I'm looking at one that's three times as expensive as the other. And I see, even if I notice the ingredients are the same, I might think, reasonably, that they're in different proportions in the migraine pill than they are in the extra-strength pill. What's the reason you might say that? Because, again, I think the supposition is that when you see the products, one is three times as expensive as the other, you're led to believe that that is more efficacious, more powerful, more potent than the cheaper alternative. And it's not just me saying that. We cite consumer studies, consumer research studies that look at pricing cues and come to the same conclusion. Don't you cite any cases in California that holds that price differentials and different trade dress constitute a statement concerning personal property or services, which is untrue or misleading? I'm reading a statute, 17-500. Right. Well, this is why the statutes are very broad. Again, the statutes are looking at whether consumers are deceived. And that's why the California, in CELTEC, the California Supreme Court said, When a scheme is evolved which on its face violates the fundamental rules of honesty and fair dealing, the Court of Equity is not impotent to frustrate its consummation because the scheme is an original one. And this is the same mistake that the lower court in the Hinojos v. Coles case made, when that court tried to create essentially a very similar test, that the statements at issue have to deal with the composition, effects, origin, or substance of the product. And this court rightly said, no, the California consumer protection statutes are not subject to such a strict interpretation. And that in that case it recognized, that case dealt with false sales prices, creating what looked like a very steep sale discount at the register. And the court there recognized that pricing, in that instance, sent a cue to the consumer that it was getting a better deal than it thought. Here pricing is sending a cue to the consumer that it is getting a more effective, more potent product than it is paying for. I just want to make clear, you're conceding that any element of misrepresentation is not fulfilled by omission, that we're talking about an affirmative act? We did specifically say that we're not proceeding under an omission theory. I thought the court might also be interested in this issue of whether we're asking a court to get involved with price regulation, because I think when I go back and look at the lower court's ruling, I think this might be one of the issues that really swayed Judge Collins, and that she was afraid that what we were asking her to do was weigh in on pricing issues. I want to be clear about what this really means. We are not asking the court, lower court or a jury, to weigh in and tell Walmart at what price it should be selling its products at. Rather, if you look just below the surface of this price regulation argument, you find out that it really doesn't apply here, because if you read Apelli's brief and you look at the court's opinion, what you see there is the concern is that courts should not be involved in regulating the pricing mechanism that operates in a free and open market. In other words, in that situation, issues like the cost of the product, supply and demand factor should be what sets the price, and the court should not get involved. But that is not the case we have here, because that argument presumes that the markets in which you're discussing are operating free of coercion and free of deception. In those instances, though, courts do step in and regulate the market, not the price, and that's what we're asking the lower court to do here, to regulate the market, not the price. That's what happens in consumer protection cases all the time. It happens in price-fixing cases all the time. When the market is tainted, courts step in and regulate that conduct. We're not talking about regulating pricing. You want to keep your time? Yeah. Thank you. Good morning. May it please the Court. I'm Frank Rothrock. I represent the defendants Walmart and Walmart.com. This is a case that's anchored in claims of deception, but it's not a case about words, which I think is unusual, almost unprecedented. Please keep your voice up, sir. I will. Sorry, Your Honor. The plaintiffs concede that Walmart did not make any misrepresentations, did not say anything that was false or misleading. They concede that Walmart made no omissions of fact. They argue that true words can deceive, but true words can deceive when something is hidden or held back when they don't tell the whole story. And here they have conceded that Walmart did not make any omissions of material facts. And the reason they did, I think, goes to the fact, that these are not the same product. The Equate Migraine product is a private label equivalent of Excedrin Migraine. Excedrin Migraine had to go through the new drug application process, the NDA process, to get permission to take it to the market. Excuse me. The manufacturer of Walmart's version, the Equate Migraine, was a company called Perigo. They had to undergo the abbreviated new drug application process in order to take that product to market. That meant they had to present clinical trials, clinical information to the FDA to establish bioequivalence with the original drug, the Excedrin Migraine drug. In contrast, the extra strength headache product, in the briefs it's called Equate ES, can be made pursuant to a recipe in an FDA monograph. It doesn't require FDA approval. So even though the active ingredients are the same, and there's no dispute they were listed on both the packages, these are not the same drug or the same medicine in the eyes of the FDA. And for that reason, Walmart could not have the ES, the extra strength headache product, as treating migraines, even though it has the same active ingredients supplied by a different company. It's made pursuant to this recipe in a monograph. If Walmart had labeled it as treating migraine headaches, it would have violated FDA regulations. And I think that's probably indisputably why plaintiffs retreated from the allegations in their first admitted complaint and conceded that Walmart did not make any omissions, didn't hold anything back, didn't hide anything from consumers, and did not misstate anything to consumers. But Walmart could have priced the Equate Migraine at $3 instead of $9. They could have priced it at $1.50. They could have priced it at $12. There's a market, and the market imposes discipline. Prices are based on a number of factors, cost, availability, demand, and competition. There are three cases, well, first of all, no case was found or cited by either of us that imposes liability in a deception-based claim under any of the five statutes at issue, the New York, New Jersey statutes, and the three California statutes, based on a product's price or the color of its packaging or where it's placed on a shelf in the absence of a misrepresentation or an omission of material facts. But there are three cases that come pretty close, two of them in our brief, the Adamson case and the Crozier case, and then a very recent case, Yingst, Y-I-N-G-S-T, that's mentioned in the plaintiff's reply brief. They're all from district courts, federal district courts in New Jersey. They all granted 12b-6 motions to dismiss. In Adamson, the claim was that the plaintiff purchased birth control pills, prescription birth control pills, brand-name pills, when a lower-priced generic version was available. In the Crozier case, it was a case against J&J, Johnson & Johnson, that dealt with a neosporin-like product, was packaged in the same color as neosporin, was priced higher, but it didn't contain antibiotics, which neosporin does. And then finally, in the Yingst case, there was a price differential between Excedrin migraine and Excedrin ES, or extra-strength headache medication. In all those cases, the district court dismissed the plaintiff's action, held that price, placement on shelf, package color, in themselves, are not insufficient to impose liability absent a misrepresentation or absent an omission of material fact. So there's no authority that supports the plaintiff's position. At least three cases run counter to it. But drilling down, this case, as plaintiffs presented, is that deception is based on the background color of the packages and on price. Plaintiffs did cite some literature on the effect of color on consumer perceptions. I think being charitable, those studies are inconclusive at best and ambiguous. In terms of price, California courts and Judge Collins, the district court judge, cited these cases. California courts have made fairly clear that there is policy of judicial abstention from dealing with economic issues. There's the Princess Cruz's case, the Lazar case, and actually the Celtech case itself. And I think there are good reasons for that when it comes to the price of a product. First, you have the market itself, the discipline imposed by the market. But how would a court approach price? Is charging twice as much for a brand name product as a private label or generic product, is that somehow unconscionable or deceitful? What if Walmart, and through a request for judicial notice, we showed that, in fact, the brand name Excedrin Migraine, Walmart was charging about twice as much for that as it was for its private label, Equate Migraine. That can be distinguished. You've got a consumer that comes into Walmart and looks at prices between Excedrin and its generic brand. The consumer is on to that pretty much. That's a little bit different, isn't it, than actually having the same product, this generic product that's made by Walmart, identical. Are these the same thing? It's not made by Walmart. I think they are the same thing, Your Honor. The active ingredients are the same. But again, I'm saying, doesn't the consumer going into the store understand that it might as well buy the generic as opposed to the brand label? Because the consumer generally understands that these are just knockoffs. Well, Your Honor, in Adamson, the consumer obviously didn't understand that because they claimed they were deceived into buying the brand name product at a greater price. I suppose it depends on the individual consumer. But, for example, what if Costco is selling its knockoff version of Excedrin Migraine for less than what Walmart is selling? Does Walmart have an obligation or duty to post a notice to customers? Hey, you can get this product cheaper across the street or at the other end of the shopping mall. Where would that end? What kind of standard would a court set? I think it would just be ad hoc subjective judgments by courts as to what's a fair price or isn't a fair price. And CELTEC, the California Supreme Court, in talking about the fairness prong of the UCL, albeit in the context of a competitor lawsuit, warned about trial courts just imposing their subjective notions of the day as to what is fair or is unfair. In our economic system, we let the market control that, at least when there's no misstatement or no omission of material fact and they concede. Can I ask you a question, Mr. Rothrock? In the Yinks case, please turn your attention to the Excedrin Migraine and Excedrin Extra Strength. Does the same situation obtain there that the ingredients in Excedrin Migraine and Excedrin Extra Strength are identical? That's my understanding. The ingredients are the same. What's different for Walmart is the manufacturers are not the same of the ES product and the migraine product. And we showed that through a request for judicial notice going to the FDA drug code directory. Are generics the same as brand name products? Their active ingredients are the same. Usually they're made by different manufacturers. I think that's a matter of some controversy. Some people prefer the brand name product. Some doctors only want to prescribe the brand name product. I don't know the answer, but I think it probably depends on the product. Some consumers want the brand name product. They feel that that gives them some indicia of validity or efficacy they don't get with a generic product. But that varies depending on the consumer. So, again, in closing, no court that we're aware of has imposed liability on deceit-based claims in this context, where there were no misrepresentations and nothing was hidden and nothing was omitted. The three courts that have addressed the issue close to the issue, a little bit different factual circumstances, have all granted motions to dismiss. Well, the argument is that there was something hidden, and the something hidden was that the $3 package was just as good as the $9 package. You didn't tell that to the consumer. Well, I don't think we could tell that to the consumer. The FDA doesn't consider them the same. The active ingredients are listed on the label, but the $3 product has not been approved for treatment of migraine headaches. We can't represent that it's as good as the other product. But that's a tactical decision, isn't it, to not get that approved, so that they can have two different products with the same ingredients, one with migraine on it and one with extra strength. Yeah, I assume the manufacturers, not Walmart. Walmart has other manufacturers. I assume one felt it was worth the cost of doing the clinical studies to show bioequivalence to go through the new drug application process, actually the abbreviated new drug application process. And another decided, no, we're just going to make this to treat headaches, and we can just make it pursuant to or in accordance with the recipe in the FDA monograph. Those are business decisions. But nothing was hidden here. The active ingredients were on the labels for both products. Unless there are any further questions, submit. Thank you. All right. Rebuttal. Thank you. So you just heard Mr. Rothrock explain why generic drugs and brand name drugs are a totally different situation. Because as he argued, there are brand loyalists, there are reasons some people would pay more for a brand because they trust the brand or something like that. And, in fact, Equate's packages for migraine and extra strength invite the consumer. It says, compare to Excedrin Extra Strength tablets active ingredients. It's inviting the comparison between the generic and the name brand drug to show them that they are getting essentially the same product. There is no such similar invitation between Equate headache and Equate migraine. And Mr. Rothrock might say, well, we're not allowed to do that. But the fact that you invite the consumer to compare the Equate brand to its name brand counterpart, but there's no similar invitation, just the consumer doesn't understand the regulatory regime. And he or she is sitting there wondering, well, if there's the same ingredient on both packages, why is one more expensive than the other? The only logical, the only plausible explanation is that the consumer thinks that the migraine product is more effective. And when Mr. Rothrock argues that the market should be free to come up with its own price, the only reason that the migraine product commands three times the price is because the market is deceived into thinking it's more effective. That brings me back to the price regulation point. The whole purpose of antitrust statutes and consumer protection statutes is to ensure that markets are free and fair and operating efficiently and rationally. And when they're not, courts and juries step in to rectify that. That's exactly what we're asking you to do in this case. And I just remind the panel that we're only at the motion to dismiss stage here. So when we allege statements like a huge price disparity that can only lead to one ineluctable conclusion, that one product is more effective than the other, those allegations should be given deference and treated in the light most favorable to the plaintiff. Thank you. Thank you very much. And we thank the council for their presentations. And that concludes our session for today. So we are adjourned until tomorrow morning at 9 o'clock.
judges: Fernandez, Bea, Settle